344 So.2d 78 (1977)
Charles B. BICE et al., Plaintiffs-Appellees,
v.
SOUTHSIDE MOTORS, INC., Defendant-Appellant.
No. 13160.
Court of Appeal of Louisiana, Second Circuit.
March 21, 1977.
*79 Hayes, Harkey, Smith & Cascio by Louis D. Smith, Monroe, for defendant-appellant.
Bice, Russell & Allen by Charles B. Bice, Winnfield, for plaintiffs-appellees.
Before BOLIN, MARVIN and JONES, JJ.
JONES, Judge.
Southside Motors, Inc., defendant and plaintiff in reconvention, appeals from a trial court decision finding it owed rent of $1350, maintaining a writ of sequestration on its movable property, and rejecting its reconventional demand. We affirm the trial court as to the demand for rent, but reverse its decision on the reconventional *80 demand, dissolve the writ of sequestration, and award damages.
Plaintiffs, Charles B. Bice and William M. Russell, verbally leased a building in Winnfield, Louisiana to defendant for use as a furniture store, commencing in February, 1975. Plaintiffs claim the rent for the building was agreed to be the greater of $350 per month or a percentage of gross receipts based on a sliding scale.[1] Southside claimed the rent for the building was $350 per month without reference to gross receipts. There is no dispute Southside paid rent of $350 per month for each month during the term of the lease.
Plaintiffs testified they met with Leon F. Surratt, owner and president of Southside Motors, and Gene Dorman, a managerial employee of Southside, in plaintiffs' law offices in Winnfield on January 25, 1975, and that Surratt agreed to a one year lease of the building for the greater of $350 per month or a percentage of the gross receipts. Bice and Russell also testified Surratt agreed to this rental only upon the condition he would have the right to cancel the lease upon 60 days notice. It was the intent of all the parties a written lease would be prepared to reflect their verbal agreement.
On May 13, 1975, plaintiffs mailed a written lease to Surratt for execution, along with a corporate resolution authorizing Surratt to sign the lease and other supporting documents. Russell testified he contacted Surratt on June 13, 1975, to inquire why the lease had not been signed and returned. Surratt stated to Russell the signing was unnecessary as he was giving the required 60 days notice of cancellation of the lease. Plaintiffs received a certified letter from Surratt dated that same day which also gave plaintiffs the required 60 day notice of cancellation of the lease. Several weeks later, in late June, Surratt told plaintiffs that he intended to liquidate the stock of the store, and remove all the stock he was unable to sell. At this meeting Surratt also unequivocally denied he owned any rent under the percentage portion of the lease.
Southside began a well advertised liquidation sale on July 3, 1975. On the same day, plaintiffs filed this suit to collect the rent defendant refused to pay under the disputed terms of the rental provision in the verbal lease and, in addition, had all movable property on the premises sequestered. Southside answered, denying any rent was due, and reconvened for damages for wrongful seizure of their property under the writ of sequestration.
Plaintiffs introduced the unsigned written lease and supporting documents into evidence at trial. Surratt testified he refused to enter into the percentage lease agreement proposed by plaintiffs, and they finally agreed to rental in an amount of $350 per month, with Southside to provide all insurance coverage. Surratt further testified he attempted to call Bice several times after receipt of the written lease in early May to state his refusal to rent under the percentage provisions but was never able to get in touch with him. Dorman's testimony corroborated Surratt's statements concerning his refusal to enter into a percentage lease during the January 25, 1975 meeting.
*81 The trial court noted the letter of cancellation, written by Surratt several weeks after he received the written lease containing the disputed percentage rental provisions, made no mention of his disagreement as to the rental provisions. The court found Surratt's statements concerning his attempted calls to Bice to refuse to rent the building under the terms of the written lease, were not corroborated by any other evidence. The trial court then held although the testimony of the parties present at the time of the confection of the verbal lease was in conflict, plaintiffs had established their version of the verbal lease by a preponderance of the evidence. The trial judge based this decision on finding plaintiff's actions in preparing and mailing the unsigned lease, when considered in connection with the failure of defendant to prove it promptly objected to the terms of the written lease after receiving it, supported a holding that the unsigned written lease embodied the terms of the verbal lease.
Defendant urges the trial court erred in holding plaintiffs carried their burden of proof, stating the jurisprudence is clear where the unsupported testimony of a party having the burden of establishing a particular fact is contradicted by the testimony of the other party, and the credibility of neither is attacked, in the absence of corroborating evidence or circumstances it cannot be said that the party having the burden of proof has sustained that burden. See Johnson v. Johnson, 296 So.2d 470 (La. App., 2d Cir. 1974); Diaz v. Breaux, 252 So.2d 697 (La.App., 1st Cir. 1971). While this statement is correct, it has no application to the situation before us. The finding of the trial court of the failure of defendant to promptly object after receipt of the written lease or to establish by evidence other than the uncorroborated testimony of Surratt that he attempted to telephone plaintiffs and state Southside's absolute refusal to lease the building under the percentage provisions, is just the sort of circumstances intended by the jurisprudence as sufficient to alone support a party's otherwise uncorroborated testimony. See Winford v. Wilson, 59 So.2d 498 (La.App., 2d Cir. 1952).
Defendant also urges that plaintiffs have not introduced the testimony of ". . . one credible witness . . ." to substantiate their claim for rent, as required by LSA-C.C. art. 2277, which states:
"* * * [S]uch contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
The jurisprudence is clear in establishing the requirement of ". . . one credible witness . . ." can be satisfied by the testimony of a party to the proceeding. Burt v. Hebert, 338 So.2d 717 (La.App., 1st Cir. 1976).
The findings of fact by the trial court are entitled to great weight and much discretion, and we cannot say the trial judge abused this discretion. As stated in Canter v. Koehring, 283 So.2d 716 (La. 1973):
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. . . . The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate . . . witnesses. . . but also upon the proper allocation of trial and appellate functions between the respective courts." Id. page 723.
The decision of the trial court awarding judgment against Southside for $1350 as unpaid rent is correct.
Defendant also asserts it is entitled to damages and attorney's fees for a wrongful seizure of its property claiming the writ of sequestration should not have been issued because the grounds stated for issuance of the writ in plaintiffs' verified petition are not established.
Plaintiffs' petition asserted defendant had agreed to the percentage rent agreement *82 earlier discussed, and payments under this agreement were past due at the time suit was filed. Plaintiffs further asserted they had a lessor's privilege over the property on the leased premises, and it was within the power of the defendant to conceal, part with, or dispose of the property located on or about the leased premises. Based on these grounds, plaintiffs asked for issuance of a writ of sequestration over all the movable property of defendant on the leased premises.
In our earlier discussion, we found the written, unsigned lease embodied the terms of the agreement between the parties. In that lease, following the terms of the sliding scale provision, is the following statement:
"The actual lease payments [under the sliding scale] will be calculated at the end of the lease. However, payments to be credited to the actual lease payment will be made monthly, in advance, by the 10th of the month, in the amount of Three hundred fifty and 00/100 dollars ($350.00) per month." (emphasis added).
Therefore, the rent under the sliding scale provision was not yet due when suit was filed and the writ of sequestration was issued. It was also established defendant was not in arrears in its monthly rent payments. It being established there was no rent yet due at the institution of this suit, the writ of sequestration based on past due rent was improperly issued and should be dissolved.
Although plaintiffs had established at trial they had sufficient grounds to properly obtain a writ of sequestration to protect their lessor's privilege based on rent not yet due, LSA-C.C.P. art. 3572,[2] they did not allege these facts in their petition, and could not rely on these grounds to support the writ issued. Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970); Wright v. Hughes, 254 So.2d 293 (La.App., 4th Cir. 1971).
Defendant is entitled to receive compensation for its actual damages sustained as a result of the wrongful sequestration. LSA-C.C.P. art. 3506. However, the proof to substantiate claims of damages must be clear and definite and not subject to conjecture. Talley v. Bradley, 177 So.2d 624 (La.App., 3d Cir. 1965); Ralph's Fleet, Inc. v. American Marine Corporation, 157 So.2d 317 (La.App., 4th Cir. 1963). The only damage defendant has adequately established is $220 for the cost of the bond obtained to release the property seized under the writ. Defendant is also entitled to reasonable attorney's fees in connection with efforts to dissolve the writ. LSA-C.C.P. art. 3506. We find the amount of reasonable attorney's fees to which defendant is entitled to be $500.
For the reasons expressed, we affirm the trial court judgment in favor of plaintiffs as regards the award of $1350 for rent due. As to defendant's reconventional demand, we reverse the trial court, dissolve the improperly issued writ of sequestration, and award judgment in favor of defendant and against plaintiffs in an amount of $720 for damages and attorney's fees, plus legal interest from date of judicial demand until paid. All costs are to be paid one-half by plaintiffs and one-half by defendant.
Affirmed in part, reversed in part.
NOTES
[1] The percentage provisions of the lease were:

"Four percent (4%) on the amount of gross sales of goods made by lessee, on the premises, provided such sales do not reach or exceed One Hundred Thousand and 00/100 Dollars ($100,000.00) for the period this lease is in effect; plus
"Three percent (3%) on the amount of gross sales over One Hundred Thousand and 00/100 Dollars ($100,000.00) but less than Two Hundred Thousand and 00/100 Dollars ($200,000.00); plus
"Two percent (2%) on the amount of gross sales over Two Hundred Thousand and 00/100 Dollars ($200,000.00); plus
"One percent (1%) on the amount of gross sales in excess of Three Hundred Thousand and 00/100 Dollars ($300,000.00)."
Plaintiffs stated in its answer to interrogatories the gross receipts for the period it occupied the building were $94,512.56. The trial court found after applying the applicable percentage of the sliding scale to this amount, when reduced by the monthly rent already paid by defendant as required in the lease, left a sum of $1350 still owed by defendant as rent.
[2] "Art. 3572. Sequestration before rent is due

"A sequestration based upon a lessor's privilege may be obtained before the rent is due, if the lessor has good reason to believe that the lessee will remove the property subject to the lessor's privilege. If the rent is paid when it becomes due, the costs shall be paid by the plaintiff."